IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ACCESSDATA CORPORATION, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ALSTE TECHNOLOGIES GmbH, a German limited liability company,<br><br>Defendant. | ORDER AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:08 CV 569 (TC) |
| ALSTE TECHNOLOGIES GmbH, a German limited liability company,<br><br>Counterclaimant,<br><br>vs.<br><br>ACCESSDATA CORPORATION, a Utah corporation,<br><br>Counterdefendant. | |

Defendant and Counterclaimant ALSTE Technologies alleges in its counterclaim that Plaintiff and Counterdefendant AccessData Corporation (AccessData) breached both a Training Partner Agreement and a Technical Support Agreement between the two parties. AccessData asks the court to dismiss these counterclaims. It argues that, first, the court lacks subject matter

jurisdiction over the counterclaims because they are not compulsory and because the amount in controversy is allegedly insufficient to meet the $75,000 requirement for diversity jurisdiction, and second, that ALSTE failed to allege cognizable damages for the alleged breach of the Training Partner Agreement. For the reasons explained, AccessData's motion is granted in part and denied in part. Although the court concludes that it has supplemental jurisdiction over both of ALSTE's breach of contract claims, ALSTE's claim for breach of the Training Partner Agreement is dismissed without prejudice for failure to state a claim.

## BACKGROUND[1]

AccessData, a Utah company, develops and sells software related to electronic evidence and cryptographic systems. The Forensic Toolkit is one of Access Data's software products. In May 2005 AccessData entered into a written agreement ("Reseller Agreement") with ALSTE, a German company. ALSTE agreed to resell the Forensic Toolkit software in German- speaking parts of the European Union. Section 4.5 of the Reseller Agreement directed that ALSTE, "when possible," would "provide technical support to its Customers. AccessData will provide to Reseller technical support documentation, and telephone support when required." (Ex. A, 4, Decl. Timothy Leehealey, Mem. Opp'n Summ. J., Docket No. 17.)

In March 2006 AccessData announced in a newsletter that ALSTE employees Tanja

---

[1]The court presents the following facts as consistent with its role in considering AccessData's motions to dismiss. When considering the motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of the well plead factual allegations in the counterclaim and views these facts in the light most favorable to ALSTE, the pleading party. See Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). And when considering a facial attack on the allegations regarding subject matter jurisdiction, the court must accept the allegations contained in the counterclaim as true. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2006); Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir.2005); Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995).

Giacovelli and Steven Wood had earned AccessData Certified Examiner status and that they were the first two persons to receive such status. Based on this report, individuals with no business relationship with ALSTE started calling Ms. Giacovelli and Mr. Wood for technical support. These callers included the customers of other resellers. Also, AccessData directly referred German-speaking users to Ms. Giacovelli and Mr. Wood.

After a few months, the volume of calls was causing ALSTE "severe business disruption." (First Am. Answer & Countercl.,7, Docket No. 34.) ALSTE brought the problem to AccesssData's attention. Because AccesssData wanted ALSTE to continue providing technical support to noncustomers, the two companies negotiated an oral agreement, which the parties refer to here as the "Technical Support Agreement." In the Technical Support Agreement, ALSTE agreed to give technical support to noncustomers in exchange for "training seats" that "could be converted to a cash value and credited to ALSTE's balance relating to software sales." (Id., 8.)

On May 7, 2005, ALSTE and AccessData signed another agreement, having to do with ALSTE's ability to purchase training kits from AccessData ("Training Partner Agreement"). Although the counterclaim offers few other details, ALSTE claims that AccessData breached the Training Partner Agreement when it "fail[ed] to allow ALSTE to conduct training classes under false pretenses." (Id., 8-9) ALSTE claims that it was entitled to profits of between $1,995 and $2,495 per training course.

Because of AccessData's alleged breaches of the Technical Support Agreement and the Training Partner Agreement, ALSTE contends that it has suffered at least $103,740 in total damages. ALSTE makes no further distinctions regarding damages in its counterclaim.

ALSTE maintains that the court has jurisdiction pursuant to 28 U.S.C. § 1332. ALSTE

also suggests that its counterclaims are compulsory, indicating that they are brought based on Rule 13(a)(1) of the Federal Rules of Civil Procedure.

Citing Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure, AccessData filed a motion to dismiss ALSTE's counterclaims. AccessData argues that the court must dismiss the claim for breach of the Training Partner Agreement for failure to state a claim and to dismiss both the claim for breach of the Training Partner Agreement and for breach of the Technical Support Agreement for lack of subject matter jurisdiction.

After reviewing the briefs on AccessData's motion to dismiss, the court ordered the parties to submit additional briefing on the relevance of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (Order, Docket No. 55.) Both AccessData and ALSTE complied. (See Pl.'s Br., Docket No. 56; Def.'s Br., Docket No. 57.). The court reviewed the additional briefing and considered the merits of the arguments presented.

## ANALYSIS

Consistent with its responsibilities as a court of limited jurisdiction, the court first considers AccessData's challenge to its subject matter jurisdiction. See In re Aramark Leisure Servs., 523 F.3d 1169, 1173-74 (10th Cir. 2008). Only if the court has subject matter jurisdiction can it reach the issue of whether ALSTE plead a cognizable claim for breach of the Training Partner Agreement. See San Juan County, Utah v. United States, 503 F.3d 1163, 1211 (10th Cir. 2006) (considering subject matter jurisdiction challenge first even though the issue was raised late in the litigation); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception." (quotation ommitted).)

**Rule 12(b)(1) Motion**

AccessData contends that because ALSTE's counterclaims are permissive rather than compulsory as defined by Rule 13 of the Federal Rule of Civil Procedure and because the amount in controversy is insufficient to give the court diversity jurisdiction, the court lacks subject matter jurisdiction.

A court may dismiss a claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure if it appears that it lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). When a court considers the "'sufficiency'" of a complaint or counterclaim under Rule 12(b)(1), the court "'must accept the allegations . . . as true.'" Craig v. United States, No. 09-6082, 2009 WL 2392922 (10th Cir. Aug. 5, 2009), quoting Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995).

The court is aware of its limited jurisdictional power, possessing only that power as specifically authorized by the Constitution and federal statute. E.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). And the court recognizes the importance of AccessData's claims in light of that limited power. But considering 28 U.S.C. § 1367, the statute that codifies the so-called supplemental jurisdiction of federal courts, the court need not resolve the disputes as to whether the counterclaims are compulsory or permissive,[2] or whether the damages alleged are sufficient for diversity jurisdiction[3] in order to conclude that subject matter jurisdiction exists in this case.

---

[2] AccessData concedes that the issue of whether ALSTE's counterclaims are permissive or compulsory "is not controlling" on the determination of whether the court has supplemental jurisdiction over the claims. (Pl.'s Br., 1, Docket No. 56.)

[3] "Even where an independent basis for federal jurisdiction is lacking, [§ 1367] grants the district courts the authority to exercise subject-matter jurisdiction . . . ." 32A Am. Jur. 2d Federal Courts § 600 (2009).

Once a district court has original jurisdiction over a claim in an action, the court has the power to decide other claims that "are so related" that they form "part of the same case or controversy." 28 U.S.C. § 1367, see Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005); Harshman v. Jackson Hole Mountain Resort Co., 379 F.3d 1161, 1164-65 (10th Cir. 2004). 28 U.S.C. § 1367 establishes the scope of a district court's power to decide a claim based on this supplemental jurisdiction; the statute represents an effort to "vindicate values of economy, convenience, fairness, and comity." Id. at 1164; see also Nielander v. Bd. of County Comm'rs, — F.3d —, 2009 WL 2713196 (2009) (indicating that courts should consider judicial economy, convenience, fairness, and comity in deciding whether to exercise supplemental jurisdiction); Erwin Chemerinsky, Federal Jurisdiction 335 (4th ed. 2003) (considering judicially-created jurisdictional doctrines and supplemental jurisdiction). A dispute is part of the same case or controversy if it derives from a "common nucleus of operative fact." Harshman, 379 F.3d at 1165, quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). And even when a "common nucleus of operative fact exists," a court may decline to exercise its supplemental jurisdiction. Id.

In this case, the parties dispute whether ALSTE's counterclaims for breach of the Technical Support Agreement and Training Partner Agreement derive from the same common nucleus of operative fact as the claim for breach of the Reseller Agreement.[4]

---

[4] The court is aware that ALSTE invoked 28 U.S.C. § 1332 as a basis of jurisdiction and did not mention 28 U.S.C. § 1367. But case law suggests that this omission is not necessarily fatal to the exercise of a court's supplemental jurisdiction. The U.S. Court of Appeals for the Sixth Circuit considered a similar scenario, for example, in Voyticky v. Village of Timberlake, 412 F.3d 669 (6th Cir. 2005). In that case, the district court had dismissed the plaintiff's state law claims for lack of subject matter jurisdiction after the plaintiff failed to identity which of its claims were based in state law and failed to invoke jurisdiction pursuant to § 1367. The Sixth Circuit held that the district court had erred and that the court had supplemental jurisdiction. "Plaintiffs do not need to specifically plead the supplemental jurisdiction statute, nor do they

The U.S. Court of Appeals for the Tenth Circuit considered a district court's exercise of supplemental jurisdiction most recently in Edwards v. Doe, No. 07-7050, 2009 WL 1395468 (10th Cir. 2009). There, the court further explained the boundaries of the common nucleus of operative fact standard. The facts of Edwards are as follows: Samuel Edwards entered into a fee agreement with the law firm of Holden & Carr. This law firm filed a complaint in federal district court seeking damages on Mr. Edwards's behalf from several defendants for injuries Mr. Edwards had sustained in a workplace injury. The case went to trial, and the jury rendered a verdict of $1.5 million in Mr. Edwards's favor. After trial, the partner who had represented Mr. Edwards left Holden & Carr and established the law firm of Capron & Edwards. Holden & Carr claimed that it was entitled to fees and filed an application for a hearing on enforcement of its attorney's lien. Both firms filed cross-motions for summary judgment with the district court, and both firms argued that the district court had supplemental jurisdiction to resolve the dispute.

Although the district court in Edwards "apparently agreed" with the law firms, it did not "include any discussion of jurisdiction in its order." Id. at *4. Citing its independent duty to examine its jurisdiction, the Tenth Circuit considered whether the district court had appropriately exercised supplemental jurisdiction. After a review of relevant case law from various jurisdictions, the Tenth Circuit concluded that the fee dispute between the two firms formed "part of the same case or controversy as the plaintiff's personal injury litigation" because the plaintiff

---

need to specifically identify state law claims as such if the cause of action obviously exists under state law," the court concluded. Id. at 674. Finding the Sixth Circuit's rational persuasive, courts from other jurisdiction have followed Voyticky. E.g., Johnson v. City of New York, No. 05 Civ. 7519, 2008 WL 4450270 (S.D.N.Y. Sept. 29, 2008) (citing Vovticky and concluding that "plaintiff was not required to specifically plead the supplemental jurisdiction statute in the Amended Complaint"), Mosley v. City of Chicago, No. 06 C 6314200, 2007 WL 2608517, *5 (N.D. Ill. Sept. 4, 2007) (following Voyicky even though the court frowns on "omissions to explicitly invoke supplemental jurisdiction" and believes that "attorneys should take care to state clearly the basis of jurisdiction").

in the underlying action was a party to the fee contract, and the fee dispute involved the firms that represented the plaintiff in the personal injury litigation and an attorney's lien claimed in that action. Id. at *6. Furthermore, the court noted that the district court's exercise of supplemental jurisdiction was "judicially economic and convenient for the litigants." Id.

The lessons of Edwards are relevant in this case. The counterclaims for breach of the Technical Support Agreement and breach of the Training Partner Agreement involve disputes between AccessData and ALSTE, the same parties that are involved in the underlying action for alleged breach of the Reseller Agreement. And according to the counterclaim, the business relationship between ALSTE and AccessData that began with the formation of Reseller Agreement is directly related to the formation of the Training Partner Agreement and the Technical Support Agreement between these same parties. Looking at the Technical Support Agreement, its formation allegedly occurred only because of the inadequacies of the Reseller Agreement. Compensation for ALSTE's performance under the Technical Support Agreement involves the Reseller Agreement's payment structure, namely that ALSTE was to allegedly receive credits for any outstanding balance owed.

Finally and perhaps most significantly, as in Edwards, the court's exercise of supplemental jurisdiction in this case is consistent with the values of judicial economy and convenience. Considering the state of the litigation, it would make little sense for the parties to litigate ALSTE's claim for breach of the Technical Support Agreement and breach of the Training Support Agreement in a separate forum when the dispute involves the same business relationship, the same parties, many of the same events, and likely similar evidence and witnesses as the claim for breach of the Reseller Agreement originally filed in this court.

Accordingly, the court concludes that the claims for breach of the Technical Support

Agreement and Training Partner Agreement form part of the same case or controversy and will exercise its supplemental jurisdiction pursuant to § 1367(a) over these counterclaims.

**Rule 12(b)(6) Motion**

AccessData next argues that the court should dismiss ALSTE's counterclaim for breach of the Training Partner Agreement because it contends that the only damages ALSTE seeks are not recoverable as shown by the plain language of the Training Partner Agreement contract.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present . . ., but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation omitted). The court must look for "plausibility in the complaint." Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1223 (10th Cir. 2009) (quotation omitted). To survive a motion to dismiss, the plaintiff or counterclaimant must "nudge his claims across the line from conceivable to plausible." Cory v. Allstate Ins., — F.3d —, 2009 WL 2871541, *4 (10th Cir. 2009) (quotation omitted). If assumed to be true, the allegations must be enough that the plaintiff or counterclaimant "plausibly (not just speculatively) has a claim for relief." Corder, 566 F.3d at 1244 (quotation omitted). "'[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.'" Cory, 2009 WL 2871541, *4 (quotation omitted) (alteration in original).

Here, the parties do not dispute that Utah law governs the Training Partner Agreement. And under Utah law, a plausible claim for breach of contract requires four elements, one of which is damages. Bair v. Axiom Design, LLC, 20 P.3d 388, 392 (Utah 2001); see also Eleopulos v. McFarland & Hullinger LLC, 145 P.3d 1157, 1159 (Utah Ct. App. 2006) ("A

9

breach of contract claim requires four essential elements of proof, one of which is damages."). Because the parties do not dispute that the Training Partner Agreement features provisions applicable to the award of damages, the only task before the court is to decide whether the damages plead are precluded by the plain language of the contract or whether ALSTE presented a plausible claim for breach.[5]

In presenting a claim for breach of the Training Partner Agreement, ALSTE contends that it was entitled to make between $1,995 and $2,495 per training class. And when AccessData allegedly stopped allowing ALSTE to conduct these training classes, the German company was wrongly deprived of "fees and credits for its services." (First Am. Answer & Countercl., 7, Docket No. 34.) AccessData argues that even if all of these allegations were true, ALSTE fails to present a claim for breach of contract since the damages ALSTE seeks are not recoverable under the Training Partner Agreement.

The relevant language of the Training Partner Agreement reads:

---

[5] Although ALSTE failed to include a copy of the Training Partner Agreement with its First Amendment Answer and Counterclaim, AccessData provided a copy of the document in support of its motion to dismiss. (See Ex. A, Notice of Errata, Decl. Timothy Leehealey, Docket No. 38.)

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court may generally only consider those facts present in the complaint or counterclaim. County of Sante Fe, N.M. v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1035 (10th Cir. 2002). The court may expand its review, however, and consider other documents referred to in the complaint or counterclaim if the documents are "central" to the claim, and "the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002); see also Smith, 561 F.3d at 1098 ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." (citations omitted)).

The court reviews the relevant language of the Training Partner Agreement in considering the motion to dismiss as ALSTE referred to the document in its counterclaim, the document is central to the counterclaim, and the parties do not dispute the authenticity of the document provided.

> 10.3 No Consequential Damages. Notwithstanding anything to the contrary in this Agreement, neither AccessData nor Training Partner shall be liable to the other party for any indirect, incidental, consequential, or special damages (including lost profits) sustained or incurred in connection with this Agreement, including any breach or termination of this Agreement, or in connection with Training Courses and Training Kits that are subject to this Agreement, regardless of the form of action and whether such damages are foreseeable or known in advance to be possible.
>
> 10.4 Limited Damages. AccessData's liability to Training Partner shall not exceed amounts paid to AccessData by Training Partner under this Agreement. This limitation applies to all causes of action in the aggregate, including without limitation any action for breach of contract, breach of warranty, negligence, strict liability, misrepresentation, and other torts.

(Id., 6 (emphasis added).)

The language of the contract is unambiguous.[6] Even assuming all of the facts alleged in the counterclaim are true, ALSTE may not recover any indirect, incidental, consequential, or special damages—including lost profits—from AccessData for a breach of the Training Partner Agreement. The Training Partner Agreement provides that AccessData shall only be liable for at most the amount that ALSTE paid, even in cases of breach of contract.

Here, ALSTE claims that it was entitled to make between $1,995 and $2,495 per training class. And the company's only claim for damage is based on its contention that it was deprived of these fees and credits after AccessData allegedly breached the Training Partner Agreement and stopped allowing ALSTE to conduct classes. In other words, ALSTE's sole claim for damages is based on a theory of lost profits that the plain language of the Training Partner Agreement specifically bars it from recovering. Without a cognizable claim for damages, which

---

[6] When "the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning." Bakowski v. Mountain States Steel, Inc., 52 P.3d 1179, 1184 (Utah 2002). A contract provision is ambiguous only if it is "capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.' " Winegar v. Froerer Corp., 813 P.2d 104, 108 (Utah 1991) (quotation omitted).

11

is an element of a breach of contract claim under Utah law, ALSTE fails to present a plausible claim for breach of the Training Partner Agreement. (Considering the brevity of ALSTE's argument in opposition to the motion to dismiss and its emphasis that it should be allowed leave to amend, the court suspects that ALSTE appreciates the flaws in its pleading.) AccessData's motion to dismiss ALSTE's counterclaim is granted without prejudice.

## ORDER

AccessData's Motion is GRANTED in part and DENIED in part. (Docket No. 35.) ALSTE's counterclaim for breach of the Training Partner Agreement is DISMISSED without prejudice.

DATED this 7th day of October 2009.

BY THE COURT:

TENA CAMPBELL
Chief Judge